

FILED by Z.M. D.C.

ELECTRONIC

**August 20, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA.- MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
**Miami Division**

ANTHONY DAVIS &
CONIQUE DAVIS,

              Plaintiffs,

vs.

AURORA LOAN SERVICES, LLC,
LEHMAN BROTHERS HOLDINGS, INC.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC. (MERS),
DOES 1-100, TRUSTEES 1-100,

              Defendants.

_____/

## 09-CV-22460-SEITZ/O'SULLIVAN

**Case No.:**

### NOTICE OF REMOVAL

#### I. INTRODUCTION

Defendant Aurora Loan Services LLC (**Aurora**) removes the action pending in the Circuit Court for the Eleventh Judicial Circuit, Miami-Dade County, Florida, under case number: 09-57569-CA-24. The state court is within this division of the Southern District of Florida.

Removal is based on federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1441(b). Federal questions arise under the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.*, as implemented by Regulation Z, 12 C.F.R. § 226, *et seq.* (**TILA**) and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* (**RESPA**).

Removal is also based on diversity of citizenship jurisdiction.

#### II. PROCEDURAL COMPLIANCE

This notice of removal is timely pursuant to 28 U.S.C. § 1446(b). The Davises filed this action in the State Court on August 4, 2009, and Aurora received the summons and initial

pleading on August 6, 2009.

A copy of the state court's progress docket printed from the internet on August 19, 2009, is attached as **EXHIBIT A**. Legible copies of all process, pleadings, orders, and other papers or exhibits of every kind available to be copied from the state court are attached as **COMPOSITE EXHIBIT B** in compliance with 28 U.S.C. § 1446(a). Additional papers have been filed, but are not yet available in the file for copying. Once the remaining papers are available, Aurora will file a notice of supplemental papers with the Court..

Contemporaneous with the filing of this notice of removal, the undersigned has served a notice of filing notice of removal to federal court upon plaintiff as required by 28 U.S.C. § 1446(d). A copy of that notice (without exhibits) is attached as **EXHIBIT C** in compliance with 28 U.S.C. § §1446(a). The original of the notice has been filed with the Clerk of the Miami-Dade County Circuit Court, as required by 28 U.S.C. § §1446(d).

Removal to this Court is appropriate because it is "the district court of the United States for the district and division within which such action is pending." 28 U.S.C. § 1446(a). The case is properly removed to the Miami Division. S.D. Fla. Local Rule 3.4(D).

The other defendants have not been served in this action.[1]  The pleadings and papers on file in the Miami-Dade County Circuit Court establish that no service returns concerning the other defendants have been filed, and there is no other indication that the remaining defendants have been served. (*See, generally,* EX. A and COMPOSITE EX. B.) While the "rule of unanimity" generally requires that all defendants consent to removal of a case to federal court, *see Russell Corp. v. American Home Assurance Co.*, 264 F.3d 1040, 1044 (11th Cir. 2001), one recognized exception to the unanimity requirement is that a defendant not yet served with process need not

---

[1] Defendant Lehman Brothers Holdings, Inc. is under chapter 11 bankruptcy protection through proceedings currently pending in the United States Bankruptcy Court, Southern District of New York. *See In re Lehman Brothers Holdings Inc.*, et al, Case No. 08-13555.

2

join in removal. *See White v. Bombardier Corporation*, 313 F. Supp. 2d 1295, 1299-1300 (N.D. Fla. 2004) (consent of one defendant not required where it was unserved at time of removal); *see also Gillis v. Louisiana*, 294 F.3d 755, 759 (5th Cir. 2002); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 533 n.3 (6th Cir. 1999); *McKinney v. Board of Trustees*, 955 F. 2d 924, 925 (4th Cir. 1992). At this time, Aurora may remove this case without these defendants' consents.

The grounds for removal are set forth below in accordance with 28 U.S.C. § 1446(a).

## IV. GROUNDS FOR REMOVAL

### A. Arising Under Jurisdiction.

Pursuant to the "well-pleaded complaint" doctrine, this Court has original jurisdiction of this case under 28 U.S.C. § 1331 because it arises under TILA and RESPA.[2]

Under this doctrine, "federal jurisdiction exists . . . when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). While a plaintiff is master of her complaint and free to avoid federal jurisdiction by pleading only state claims, *e.g., Hill v. BellSouth Telecommunications, Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004), removal is proper if a plaintiff has attempted to evade a federal forum by drafting an essentially federal claim in terms of state law. *Federated Dep't. Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981). This is found when the complaint "implicate[s] significant federal issues" that are "actually disputed and substantial." *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 308, 313-16 (2005); *see also McMahon v. Presidential Airways, Inc.*, 410 F. Supp. 2d 1189, 1201 (M.D. Fla. 2006).

---

[2] Complaints alleging TILA and RESPA violations are properly removable to this Court. See, e.g., Taylor v. Nelson, Case No., 2006 WL 266052, *2 (E.D. Pa. 2006) (noting removal of purported predatory lending claims asserted under various statutes, including TILA and RESPA); Boyd v. Phoenix Funding Corp., 366 F.3d 524, 529 (7th Cir. 2004) (finding it "clear that the federal truth-in-lending claim falls within the federal-question jurisdiction of the court").

3

Notwithstanding the headings of the Davises' causes of action, TILA and RESPA are direct and essential element of the claims of complaint because the complaint is based on alleged fraudulent "bait and switch" arising for alleged disclosure errors and non-delivery.  (*See* COMP. EX. B, Compl. ¶ 31 (incorporated into each count).)  TILA and RESPA control mortgage loan disclosures, and the claims cannot be decided without determining whether these statutes were violated. *See* 15 U.S.C. § 1638; 12 U.S.C. §§ 2603, 2604 (setting out required disclosures).

Specifically, the Davises assert a fraud claim on the basis that "Defendants" misrepresented the "annual percentage rate, the finance charges, the total payments, the payment schedule, and the amount financed."  (COMP. EX. B, Compl. ¶ 52(b); *see also id.* ¶ 5 (asserting defendants are creditors "within the meaning of 15 U.S.C. § 1601, 1602(t) and Regulation Z § 226.2(a)(17).)  The Davises are clearly attempting to allege TILA errors as a basis for fraud.  *See* 15 U.S.C. § 1638(a) (setting out the "required disclosures" for qualifying loans, including:  the "annual percentage rate," "amount financed," "finance charge," "total of payments," and "period of payments scheduled").

Further, the quiet title claim asserts "Defendants" cannot enforce the mortgage because they "Violated the Truth in Lending Act by failing to properly disclose and provide required documentation as required by 15 U.S.C. § 1640." (COMP. EX. B, Compl. ¶ 96(b).)

Likewise, the RESPA allegations may base removal.  The Davises alleges that they were not provided a copy of good faith estimate (**GFE**) required by RESPA, a copy of the "lock-in agreement" which notes the "Yield Spread Premium ("YSP") paid by the lender to the lender's agent," or a copy of the HUD-1 either at closing or 24 hours prior to closing."  (COMP. EX. B, Compl. ¶ 33.)  These allegations are incorporated into each of the Davises' sate law claims.  (*See id.* ¶¶ 38, 50, 55, 65, 73, 80, 88, 92.)  The negligence claim also specifically refers to an alleged

4

YSP paid to "broker/agents" and alleges that defendants made "errors in the preparation of the documents required." (COMP. EX. B, Compl. ¶¶ 44, 82(b).) Whether the loan was adequately disclosed is defined and controlled by TILA and RESPA, and RESPA controls the disclosure of the GFE, payment of a YSP and the delivery of the HUD-1. *See* 12 U.S.C. § 2603; 24 C.F.R. § 3500.10; *see also Culpepper  v. Irwin Mortgage Corp.,* 491 F.3d 1260, 1263 (11th Cir. 2007) (addressing payment of a YSP in the context of a RESPA § 2607(a) violation).

The Davises' state law claims raise real and substantial disputes concerning "the validity, construction or effect" of TILA and RESPA, and the case may be removed. *Dunlap v. G & L Holding Group, Inc.,* 381 F.3d 1285, 1290 (11th Cir. 2004) (internal quotation marks and citations omitted); *see also Grable & Sons*, 545 U.S. at 312.[3]

To the extent any of the Davises' state law claims truly are state law claims, this Court also has supplemental jurisdiction over them because they "are so related to" the RESPA and TILA claims "that they form part of the same case or controversy under Article III of the United

---

[3] Additionally, the mortgage acquisition and servicing operations of Aurora are subject to a comprehensive scheme of federal regulation: the Home Owner's Loan Act (**HOLA**), 12 U.S.C. §§ 1461 et seq., and the regulations promulgated thereunder by the Office of Thrift Supervision (**OTS**) and the Federal Home Loan Bank Board. *See* 12 C.F.R. §560.2(b)(1)-(13) (providing examples of state laws preempted by HOLA). Pursuant to HOLA and the OTS, federally chartered savings banks and their operating subsidiaries are not subject to state laws, regardless of how they are labeled, that attempt to regulate mortgage lending or servicing. *See* 12 C.F.R. § 560.2(a) ("OTS hereby occupies the entire field of lending regulation for federal savings associations"); *see also Andrade v. Wachovia Mortgage FSB*, No. 09 CV 0377 JM(WMc), 2009 WL 1111182, at *2 (S.D.Cal. April 21, 2009); *cf. Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) (when federal law preempts a field, it leaves "no room for the States to supplement it.")  Aurora is the operating subsidiary of Aurora Bank, FSB and enjoys the same federal preemption rights. *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007), 12 C.F.R. §§559.2, 559.3(n)(1).  Thus, the Davises' state law causes of action that seek to affect Aurora's lending or servicing operations are preempted, and must be alleged as federal claims, if they arise at all. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 11 (2003); *cf. Taylor v. Wells Fargo Home Mortgage, Inc.*, No. 04-cv-841, 2004 U.S. Dist. Lexis 6910 at *10 (E.D. La. Apr. 19, 2004) (upholding removal by operating subsidiary of national bank because plaintiff's "state law claim that the defendants arbitrarily assessed excessive fees and charges, including late charges, to the [plaintiffs] when they redeemed their loan is preempted by federal law"); *Phipps v. Guar. Nat'l. Bank of Tallahassee*, No. 03-420, 2003 U.S. Dist. Lexis 16984, at *13-14 (W.D. Mo. Sept. 17, 2003) (approving removal of plaintiffs' claims for unlawful "loan origination fees and loan discount fees" on complete preemption grounds); *Sartain v. Aurora Loan Services*, No. CV 09-1789 AHM, VBKx, 2009 WL 950946 (C.D. Cal April 6, 2009).

States Constitution." 28 U.S.C. § 1367(a). Given the existence of federal question and supplemental jurisdiction, hearing this case would not disturb any congressionally approved balance of federal and state judicial responsibilities. *Grable & Sons*, 545 U.S. at 314.

**B.      Diversity of Citizenship.**

This Court also has jurisdiction over this case based on federal diversity of citizenship jurisdiction. The Davises are citizens of Florida, (COMP. EX. B, Compl. ¶ 2), and no defendant that has been served is a citizen of Florida. *See* 28 U.S.C. § 1441(b). Additionally, the amount in controversy is met because the Davises seeks damages in excess of $15,000, (COMP. EX. B, Compl. ¶ 1), in addition to attorney's fees pursuant to FLA. STAT. §§ 501.2105 & 772.104, (*id.* ¶¶ 72, 79), treble damages, (*id.* ¶ 79), and the avoidance of a mortgage with an approximate $259,000 balance. (*Id.* ¶¶ 28, 97.)

### V. CONCLUSION

Removal is proper because this matter clearly falls within this Court's subject matter jurisdiction. This Court has federal question jurisdiction and this matter may be removed. *See* 28 U.S.C. §§ 1331 and 1441(b). Aurora has met all procedural requisites for removal, and this notice is timely filed. Aurora respectfully request the Court take jurisdiction over this matter and conduct all further proceedings in this case.

Respectfully submitted,

William P. Heller, Florida Bar No. 987263
e-mail:  william.heller@akerman.com
Celia C. Falzone, Florida Bar No. 0016439
e-mail:  celia.falzone@akerman.com
**AKERMAN SENTERFITT**
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
954-759-8945(ph)/954-463-2224 (fax)

*Counsel for Aurora Loan Services LLC*

6

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 20, 2009, a true and correct copy of the foregoing was sent via U.S. Mail to:  Joshua Bleil, Esq., The Ticktin Law Group, P.A., 600 West Hillsboro Boulevard, Suite 220, Deerfield Beach, Florida 33441-1610.

By:

Attorney

7

# EXHIBIT A

Miami-Dade County Clerk | Civil / Probate Justice System - Docket Information          Page 1 of 1



0 Item(s) in Basket          Home     Online Services     About u:

## Civil / Probate Justice System - Docket Information

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH

**DAVID, ANTHONY vs AURORA LOAN SVCS (LLC)**
* Click on BOOK/PAGE of a paticular docket to see the image if it is available *

**Case Number (LOCAL):** 2009-57569-CA-01 **Dockets Retrieved:** 4     **Filing Date:** 08/04/2009
**Case Number (STATE):** 13-2009-CA-057569-0000-01          **Judicial Section:** 24

| Date | Book/Page | Docket Entry | Comments |
|------|-----------|--------------|----------|
| 08/04/2009 | | CIVIL COVER | |
| 08/04/2009 | | COMPLAINT | |
| 08/04/2009 | | DEMAND FOR JURY TRIAL | |
| 08/04/2009 | | SUMMONS ISSUED | DN01 DN02 DN03 DN04 |

BACK TO SEARCH RESULTS          ALL PARTIES          START A NEW SEARCH

Civil Search Home | Help | Email | Login
Home | Privacy Statement | Disclaimer | Contact Us | About Us
2008 Clerk of the Court. All Rights reserved.



S0141755

http://www2.miami-dadeclerk.com/Civil/Search.aspx          8/19/2009

# COMPOSITE EXHIBIT B

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

ANTHONY DAVIS and
CONIQUE DAVIS,

        Plaintiffs,

v.

AURORA LOAN SERVICES, LLC.
LEHMAN BROTHERS HOLDINGS, INC.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC. (MERS),
DOES 1-100 and TRUSTEES 1-100

        Defendants.

_____/

09 - 57569 CA 24

Somer Burnette
Certified Process Server ID# 193
Second Judicial Circuit Florida
Date 8 16 09 Time 3:00 PM

## SUMMONS

### SUMMONS: PERSONAL SERVICE ON AN INDIVIDUAL
### ORDEN DE COMPARECENCIA: SERVICIO PERSONAL EN UN INDIVIDUO
### CITATION: L'ASSIGNATION PERSONAL SUR UN INDIVIDUEL

TO/PARA/A: AURORA LOAN SERVICES, LLC.
             C/O THEIR REGISTERED AGENT
             CORPORATION SERVICE COMPANY
             1201 HAYS STREET
             TALLAHASSEE, FL 32301 US

### IMPORTANT

     A lawsuit has been filed against you.  You have **20 calendar days** after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this county court, located at: 73 West Flagler Street, Suite 137, Miami, Florida, 33130.  A phone call will not protect you.  Your written response, including the case number given above and the names of the parties, must be **filed** if you want the Court to hear your side of the case.
     **If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court.** There are other legal requirements.  You may want to call an attorney right away.  If you do not know an attorney, you may call an attorney referral service or

a legal aid office (listed in the phone book).

If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also mail or take a copy of your written response to the party serving this summons:

JOSHUA BLEIL, ESQUIRE
THE TICKTIN LAW GROUP, P.A.
600 West Hillsboro Boulevard
Suite 220
Deerfield Beach, Florida 33441-1610
(954) 570-6757

**Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit Court's office. You may review these documents, upon request.**

**You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Notice of Current Address, Florida Family Law Form 12.915.) Future papers in this lawsuit will be mailed to the address on record at the clerk's office.**

**WARNING: Rule 1.350, Florida Rules of Civil Procedure, requires certain automatic disclosure of documents and information. Failure to comply can result in sanctions, including dismissal or striking of pleadings.**

## IMPORTANTE

Usted ha sido demandado legalmente. Tiene veinte (20) dias, contados a partir del recibo de esta notificacion, para contestar la demanda adjunta, por escrito, y presentarla ante este tribunal. Localizado en: 73 West Flagler Street, Suite 137, Miami, Florida 33130. Una llamada telefonica no lo protegera. Si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales. Si lo desea, usted puede consultar a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparecen en la guia telefonica.

Si desea responder a la demanda por su cuenta, al mismo tiempo en que presente su respuesta ante el tribunal, usted debe enviar por correo o entregar una copia de su respuesta a la persona denominada abajo.

Si usted elige presentar personalmente una respuesta por escrito, en el mismo momento que usted presente su respuesta por escrito al Tribunal, usted debe enviar por correo o llevar una copia de su respuesta por escrito a la parte entregando esta orden de comparencencia a:

Nombre y direccion de la parte que entrega la orden de comparencencia:

Copias de todos los documentos judiciales de este caso, incluyendo las ordenes, estan disponibles en la oficina del Secretario de Juzgado del Circuito [Clerk of the

Circuit Court's office]. Estos documentos pueden ser revisados a su solicitud.

Usted debe de manener informada a la oficina del Secretario de Juzgado del Condado de su direccion actual. (Usted puede presentar _____ el Formulario: Ley de Familia de la Florida 12.915, [Florida Family Law Form 12.915], Notificacion de la Direccion Actual [Notice of Current Address].) Los papelos que se presenten en el futuro en esta demanda judicial seran env ados por correo a la direccion que este registrada en la oficina del Secretario.

ADVERTENCIA: Regla 12.285 (Rule 12.285), de las Reglas de Procedimiento de Ley de Familia de la Florida [Florida Family Law Rules of Procedure], requiere cierta revelacion automatica de documentos e informacion. El incumplimient, puede resultar en sanciones, incluyendo la desestimacion o anulacion de los alegatos.

## IMPORTANT

Des poursuites judiciaries ont ete entreprises contre vous. Vous avez 20 jours consecutifs a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce tribunal. Qui se trouve a: 73 West Flagler Street, Suite 137, Miami, Florida 33130. Un simple coup de telephone est insuffisant pour vous proteger; vous etes obliges de deposer votre reponse ecrite, avec mention du numero de dossier ci-dessus et du nom des parties nommees ici, si vous souhaitez que le tribunal entende votre cause. Si vous ne deposez pas votre reponse ecrite dans le delai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur du tribunal. Il y a d'autres obligations juridiques et vous pouvez requerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).

Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite a la partie qui vous depose cette citation.

Nom et adresse de la partie qui depose cette citation:

Les photocopies de tous les documents tribunals de cette cause, y compris des arrets, sont disponible au bureau du greffier. Vous pouvez revue ces documents, sur demande.

Il faut aviser le greffier de votre adresse actuelle. (Vous pouvez deposer Florida Family Law Form 12.915, Notice of Current Address.) Les documents de l'avenir de ce proces seront envoyer a l' adresse que vous donnez au bureau du greffier.

ATTENTION: La regle 12.285 des regles de procedure du droit de la famille de la Floride exige que l'on remette certains renseignements et certains documents Da la partie adverse. Tout refus de les fournir pourra donner lieu a des sanctions, y compris le rejet ou la suppression d'un ou de plusieurs actes de procedure.


THE STATE OF FLORIDA:

TO EACH SHERIFF OF THE STATE: You are commanded to serve this summons and

a copy of the complaint in this lawsuit on the above-named person.

DATED: _____

AUG   4 2009

CLERK OF THE CIRCUIT COURT

By:_____
         RANITA DANIEL
         Deputy-Clerk

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:                09 - 57569 CA 24

ANTHONY DAVIS and
CONIQUE DAVIS,

    Plaintiffs,

v.

AURORA LOAN SERVICES, LLC.
LEHMAN BROTHERS HOLDINGS, INC.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEM, INC. (MERS),
DOES 1-100 and TRUSTEES 1-100

    Defendants.

_____/

THE ORIGINAL FILED

ON   AUG - 4 2009

IN THE OFFICE OF
CIRCUIT COURT DADE CO
CIVIL DIVISION

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW, ANTHONY DAVIS and CONIQUE DAVIS (hereinafter "Plaintiffs"),
by and through their undersigned counsel, hereby file and serve their Complaint and
Demand for Jury Trial against AURORA LOAN SERVICES, LLC., LEHMAN
BROTHERS HOLDINGS, INC., MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., (MERS), DOES 1-100 and TRUSTEES 1-100 (hereinafter
"Defendants"), and states as follows:

### Jurisdiction and Venue

1. This action is for damages exceeding $15,000.00, exclusive of interest,
costs, and attorneys' fees.

2. The Plaintiffs are residents of Miami-Dade County, and are otherwise *sui
juris*.

3.      The Defendants, itself, or through their subsidiaries, are now, and at all times material hereto, a banking financial institution, mortgage lender, and/or loan servicer, registered to conduct business in the State of Florida.

4.      The Defendants, through various nationwide brokers and agents, directly market, advertise, solicit, broker and/or service mortgage loans.

5.      At all times material hereto, the Defendants regularly extended, or offered to extend, consumer credit for which a finance charge is imposed, is payable in more than four installments, and are the persons to whom the mortgage loan, which is the subject of this action, are allegedly payable. The Defendants therefore are a creditor within the meaning of 15 U.S.C. §1601, 1602(t) and Regulation Z §226.2(a)(17).

6.      The Defendants through their agents and/or brokers, prepare and complete loan applications for mortgage loans, including the Mortgage Loan issued to the Plaintiffs. As part of the lending process, the Plaintiffs' loan application was submitted to the Defendants' underwriters for approval.

7.      Through purchase, merger, or other means, the Defendants have acquired the Plaintiffs' mortgage loan obligation from its originator. Due diligence would require that in the acquisition process they examine the policies, practices and procedures of the originator. Their tacit acceptance of the policies and procedures is illustrated by their completion of the acquisition transaction.

8.      The transfer of negotiable instruments in the normal course of business does not wash away the underlying fraud from the inception of the document. If the Defendants were not aware of the fraud and misconduct perpetrated by the originator they have failed in their due diligence and should be made to assume the

2

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

16 of 60

consequences of that failure, and be held accountable. By their course of moral hazard, they are as responsible as the mortgage originator for the massive mortgage scheme that has been foisted on the American people, and the ongoing repercussions of that scheme.

9.      The venue is proper. This Court has jurisdiction over the parties and the subject matter. The subject property is located in Miami-Dade County, Florida and the causes of action occurred in Miami-Dade County, Florida.

### General Factual Allegations

10.     The Defendants were engaged in a scheme to steer borrowers into risky subprime loans for its own gain.

11.     The basis of this scheme was the development of loans that were financially risky and difficult even for sophisticated borrowers to understand. Loans of this type included payment option, hybrid adjustable rate mortgages, "Fast and Easy" stated income and asset loans, interest-only loans, and payment option adjustable rate mortgages. Home equity lines of credit ("HELOC") were frequently used to obtain a second mortgage for the purpose of completing no money down, 100% financing, transactions.

12.     Borrowers were pushed into these types of loans irrespective of their ability to repay the loans, their suitability for other types of loans, or their ability to understand the complex and risky nature of the loans.

13.     Those loans were then bundled and sold on the world-wide securities market as mortgage backed securities or collateralized debt obligations.

3
THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

17 of 60

14.    In particularly, high demand was securitizations of non-conforming (subprime) loans, which were arranged and underwritten by private firms.

15.    Because they may be comprised of riskier loans, these "private label" securitizations were generating higher returns for investor, as well as greater revenues for the originators.

16.    Brokers and lending institutions were pressured to produce subprime loans that were "forward sold." That is, they were pre-sold prior to their origination in order to fund mortgage backed securities.  Lenders, including the Defendants, highly incentivized their employee brokers to place borrowers into subprime loans that matched the needed criteria.

17.    This instituted a quota system of loan production based on volume, with total disregard to a borrower's ability to repay the loan.  In the past, the loan system was set up for borrowers to succeed, now it was set up in a manner that assured an almost certain failure.

18.    Deceptive sales tactics and deceptive marketing proliferated in order to fill these quotas at any price, including: failing to disclose future interest rate increases; failure to disclose the risk of negative amortization; making false representations to borrowers about prepayment penalties and the ability to refinance; and others.

19.    The elderly, immigrants, and less educated were specifically targeted by these sales tactics. The use of "affinity networks" to lure in groups of targets was a common ploy of predatory lenders, including the Defendants, which participated in a ruinous competition for bad mortgage loans.

4
THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

18 of 60

20.    Downward pressure was constant to fulfill sales quotas causing fraud to become rampant in the system.   Brokers and their agents regularly falsified crucial information, for example inflating income to qualify a borrower, to meet the quotas that had been placed on them.

21.    As the pressure to produce loans increased, underwriters, their superiors, branch managers, and regional vice presidents were given the authority to grant exceptions to the Defendants' minimal underwriting standards and to change the terms of a loan.

22.    The lenders were fully aware of the illegalities and flawed data that fueled the industry growth, but continued the pattern of moral hazard.   That imprudent path undermined the stability of the financial system of the United States and the rest of the world.

23.    In an effort to streamline the process of the transfer of so many titles, and to increase profits by eliminating required government fees, an automated system called the Mortgage Electronic Registration Systems ("MERS") was used to hold 60 million mortgage obligations on American homes.   This system has been proven to be flawed in recent court decisions in that a proper chain of title no longer exists for many of these troubled assets/loans.

24.    A fall in home prices, coupled with a stall in the economy exposed this multi-trillion dollar automated Ponzi scheme that had only survived as long as fresh cash came in at the bottom.

25.    Greed was the motivating factor in these schemes.   Billions of dollars of profits, with total disregard for the safety of the underlying securities, were the goal.

26.    There is a line of greed that directly connects the mortgage agent present at the closing table, with the presidents and officers of all the major financial and lending institutions around the world.

27.    The Plaintiffs were victims of this scheme.

### Specific Factual Allegations

28.    On or about May 18, 2007, the Plaintiffs closed on the mortgage loan for a principal amount of 259,000.00. The subject property is located at 1899 NW 84th Street, Miami, Florida 33147.

29.    During the application process and prior to the closing of the loan, the Plaintiffs provided the Defendants with verification of income, including but not limited to, bank statements, other documentation regarding the Plaintiffs' household income, and oral verification of income in the amount of $74,320.00 per year.

30.    The Defendants and their agents that facilitated the loan transaction, fraudulently increased and grossly overstated the Plaintiffs' income, qualifying the Plaintiffs for a higher loan than their verifiable income could support.

31.    The Defendants stated that the loan terms were more competitive at the time of application through the day of closing. The Plaintiffs was rushed through the execution of the documents with less favorable loan terms.

32.    At the closing, the documents were pre-tabbed for the Plaintiffs' signature. The Plaintiffs were given a very brief period of time to read and understand over 100 pages of highly technical and detailed financial documents.

33. The Plaintiffs were not provided with true and accurate copies of important documents, including:

      a. Copies of the lock-in agreement executed between the lender's agent and the lender which note the Yield Spread Premium ("YSP") paid by the lender to the lender's agent;

      b. An executed copy of the Good Faith Estimate ("GFE") of the anticipated costs associated with the mortgage loan, as required by RESPA, 12 U.S.C. §2603; 12 C.F.R. §3500.7;

      c. A copy of the HUD-1 at the time of closing or 24 hours prior to closing making it impossible for the Plaintiffs to be fully informed of the true costs, or understand the fees and charges involved with the transaction; and

      d. Copies of other pertinent documents that were executed by the Plaintiffs at or before the closing.

34. The unknown YSP is reflected in an increase in the interest rate and terms of the note, and resulted in the payments of excess interest in an amount yet to be determined.

35. By failing to disclose the YSP paid by the Plaintiffs, the Defendants and their agents have cast a cloud on the accuracy of the credited payments and the calculated interest paid by the Plaintiffs.

36. The Defendants provided the Plaintiffs with a predatory loan with a monthly payment amount that caused the Plaintiffs' debt to income ratio to exceed 50%.

7

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

21 of 60

37.     Because of the fraud, damaging terms, excessive debt to income ratio and excessively high loan to value ratio, the Plaintiffs find themselves trapped in a ruinous loan that cannot be refinanced and threatens their financial stability.

### Count I - Breach of Fiduciary Duty; Soliciting and Conspiring to Commit a Breach of Fiduciary Duty

38.     The Plaintiffs aver the allegations contained in Paragraphs 1 through 37 above, and incorporate them in this Count by reference as though they are fully restated herein.

39.     The Plaintiffs relied on the expertise of the Defendants and their agents and placed a reliance on them prior to the transaction.

40.     The mortgage broker in this transaction was operating in the capacity of fiduciary in this mortgage transaction, and was barred from self-dealing, conflict of interest or dealing in bad faith. The broker has an obligation to make a full and accurate disclosure of the terms of the loan.

41.     The Defendants and their broker/agents marketed their products in a manner and style that gave the impression that they were conducting their business for the benefit of the customer/borrower. The Defendants and their agents deceptively lulled borrowers into believing that it was a "Trusted Advisor" looking out for the borrowers' welfare.

42.     The Plaintiffs were encouraged to believe that the Defendants and their agents were looking out for Plaintiffs' best interests, and were presenting them with products that would be the best solution for their needs.

43.     The officers in the Defendants' wholesale loan department required outside brokers to become accepted as "business partners." This acceptance of the

broker/agents as "business partners" illuminates a meeting of the minds regarding the nature of their deceitful business practices.  The Defendants closely monitored and controlled the brokers with whom they worked.

44.    This scheme rewarded the Defendants' "business partners" financially for successfully placing borrowers into the most burdensome contracts.  The Defendants paid a yield spread premium ("YSP") to broker/agents if a loan was made at a higher interest rate than the rate for which the borrower qualified, and without regard for the service the broker/agents actually provided.   The Defendants paid a rebate to a broker/agent if they originated or negotiated a loan that included a prepayment penalty.

45.    All of these excessive rewards, and others, were available to the broker/agents who originated the Plaintiffs' loan.   The amount of the YSP on the Plaintiffs' mortgage, and the bonus the Defendants paid their broker/agents to place the Plaintiffs in this onerous and abusive loan, are not yet known.  This is due to the fact that the Defendants did not furnish the Plaintiffs with the loan documentation they were required by law to provide.

46.    The  Defendants knowingly encouraged and financed the predatory lending of their broker/agents. The Defendants compensated their broker/agents beyond the reasonable value of the brokerage service they provided.

47.    The Defendants' fiduciary responsibility of making sure whether the loan should truly be done was not as important as securing the ill-gotten profits.

48.    The Defendants breached their fiduciary duty through the broker to the Plaintiffs by the actions set forth in this Count.

9
THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

23 of 60

49. The Plaintiffs suffered damages as a result of the actions of the Defendants. The Defendants conspired with, encouraged, aided, and induced their employees and agents to breach their fiduciary duty and to place the Plaintiffs in an onerous loan.

WHEREFORE, the Plaintiffs ask this Honorable Court for a Judgment of compensatory damages, costs, interest, and such further and other relief as this Court may deem just and proper. The Plaintiffs demand a trial by jury on all issues so triable.

### Count II - Fraud

50. The Plaintiffs aver the allegations contained in Paragraphs 1 through 37 above, and incorporate them in this Count by reference as though they are fully restated herein.

51. The Defendants made false statements to the Plaintiffs with the intention of and for the purpose of having the Plaintiffs rely on their false statements.

52. The Defendants misrepresented the terms of the Mortgage Loan by and including:

    a. The Defendants misrepresented and inflated the Plaintiffs' income on the application documents contrary to information the Plaintiffs provided. In preparing the Plaintiffs' mortgage application the Defendants inflated the Plaintiffs' income to $116,412.00 per year.

    b. False statements regarding the loan, including: the annual percentage rate, the finance charges, the total payments, the payment schedule, and the amount financed.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

c. False statement made to the Plaintiffs regarding the fact that the loan was a good deal for them, with the most competitive term, and the only type of loan available.

53.     The Plaintiffs relied, to their detriment, on all of the fraudulent statements delineated above in their decision to purchase the Mortgage Loan, which the Plaintiffs knew or should have known through minimal due diligence were false.

54.     Because of the fraudulent actions of the Defendants and their agents, the Plaintiffs have been damaged. They now find themselves in a precarious financial position and are faced with the possibility of losing their home. It is no part of the function of a court of justice to aid any party to a fraudulent or illegal scheme in carrying it out, in adjusting its accounts, or in dividing its spoils.

WHEREFORE, the Plaintiffs ask this Honorable Court for a Judgment of compensatory damages, costs, interest, and such further and other relief as this Court may deem just and proper. The Plaintiffs demand a trial by jury on all issues so triable.

### Count III - Conspiracy to Defraud

55.     The Plaintiffs aver the allegations contained in Paragraphs 1 through 37 above, and incorporate them in this Count by reference as though they are fully restated herein.

56.     The Plaintiffs allege that the Defendants, and their underwriters, agents and/or brokers were co-conspirators in a scheme to defraud the Plaintiffs and other similarly situated home buyers.

57.     The Defendants had knowledge of the pattern of fraud and the deceptive nature of the scheme at all levels of their organization, including: officers, directors,

11
THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

25 of 60

owners, operators, employees, agents, and other representatives. The Defendants' system of underwriting and verification was regularly superseded to facilitate the completion of fraudulent loans.

58. The Defendants incentivized employees to produce loans regardless of the possibility of fraud.

59. The Defendants had an agreement with their agents to produce risky subprime, predatory loans. This agreement is outlined in the weekly "mortgage circulars" that were distributed to agents. The "circulars" illustrated the monetary incentives involved in the sales of different loan types. This agreement illustrates the "meeting of the minds" that is central to the conspiracy to defraud the Plaintiffs and others similarly burdened by predatory loans.

60. The Defendants committed fraud by unlawful means in the execution of mortgage loans and when they encouraged their employees and agents to breach their fiduciary duty to borrowers, including the Plaintiffs.

61. The Defendants committed fraud when they manipulated the value of the Plaintiffs' home with the appraisals.

62. The Defendants committed fraud when their agents manipulated the Plaintiffs' income on the Mortgage application.

63. These actions were overt, with the goal of defrauding the Plaintiffs of their home and further defrauding the Plaintiffs of the exorbitant amounts of interest generated by the loan.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

64.    The Plaintiffs were damaged by the Defendants fraud, and the underlying conspiracy, to the point of being faced with the possibility of losing her home, being unable to obtain refinancing from other sources and damage to their credit.

WHEREFORE, the Plaintiffs ask this Honorable Court for a Judgment of compensatory damages, costs, interest, and such further and other relief as this Court may deem just and proper. The Plaintiffs demand a trial by jury on all issues so triable.

### Count IV - Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.203 (FDUTPA)

65.    The Plaintiffs aver the allegations contained in Paragraphs 1 through 37 above, and incorporate them in this Count by reference as though they are fully restated herein.

66.    The Plaintiffs are a "consumer" as defined by Fla. Stat. §501.203(7).

67.    The Defendants have engaged in "Trade or Commerce" as that term is defined in Fla. Stat. §501.203(8).

68.    The Defendants are in the business of facilitating the lending of monies and the lending of monies.

69.    The Defendants engaged in a pattern of false, deceptive, and misleading representations that had the effect of defrauding consumers into applying for loans from the Defendants.

70.    The Note and Mortgage are evidence of the fact the Plaintiffs procured the loan by securing the obligation with their home.

71.    The Plaintiffs' Mortgage Loan has become a financial millstone that has brought them to the threshold of losing their home.

13
THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

27 of 60

72.     As a direct and proximate result of the actions of the Defendants, the Plaintiffs finds themselves damaged by the false, deceptive, and misleading representations.

WHEREFORE, the Plaintiffs ask this Honorable Court for a Judgment of compensatory damages, plus any interest to which the Plaintiffs are entitled, costs and attorneys' fees, pursuant to Fla. Stat. §501.2105 and §501.211, The Florida Deceptive and Unfair Trade Practices Act, and such other and further relief as this Court may deem just and proper. The Plaintiffs demand a jury trial on all issues so triable.

### Count V - Violation of Fla. Stat. §772.101-104, §817.54
### Pattern of Criminal Activity

73.     The Plaintiffs aver the allegations contained in Paragraphs 1 through 37 above, and incorporate them in this Count by reference as though they are fully restated herein.

74.     The prohibited acts committed by the Defendants are enumerated in Fla. Stat. §817.54 et. seq.   The Defendants, by and through their agents and officers, engineered a scheme based on a pattern of criminal activity that was massive in scope.

75.     This vicious pattern of fraud and the reinvestment of the proceeds from that fraud, are alleged in the instant complaint, and have been further enumerated in multiple jurisdictions by multiple plaintiffs.

76.     The Defendants knowingly conspired to commit mortgage fraud when they accepted funds in connection with the fraudulent mortgage lending process.

77.     The Defendants, through a pattern of criminal activity, have attempted to acquire a control over the Plaintiffs' real property.

78.    The Defendants have received the proceeds of the Plaintiffs' Mortgage Loan from a pattern of criminal activity. The Defendants have further used those proceeds to invest in the acquisition to title, right to, or interest in other real property.

79.    The prohibited acts committed by the Defendants are well in excess of the two incidents required by Fla. Stat. §772.102(4). Based on the volume of loans originated by the Defendants and its agents in Florida, these crimes should number in the thousands.

WHEREFORE, the Plaintiffs ask this Honorable Court for a Judgment of compensatory damages, treble damages pursuant to Fla. Stat. §772.104, costs, any interest of which the Plaintiffs are entitled, attorneys' fees pursuant to Fla. Stat. §772.104, and such further and other relief as this Court may deem just and proper. The Plaintiffs demand a trial by jury on all issues so triable.

### Count VI - Negligence

80.    The Plaintiffs aver the allegations contained in Paragraphs 1 through 37 above, and incorporate them in this Count by reference as though they are fully restated herein.

81.    During the time that the Defendants and their agents solicited the Plaintiffs' business and completed the Plaintiffs' Mortgage Loan, the Defendants were under a duty to employ competent mortgage brokering techniques, including but not limited to, protecting the Plaintiffs' financial interests.

82.    The Defendants specifically breached their duty by the following actions:

    a. Knowingly failing to provide an accurate representation of the terms of the loan;

15

b. By making errors in the preparation of the documents required for the Mortgage Loan;

c. By failing to properly explain to the Plaintiffs the nature and purpose of all of the documents that were presented to the Plaintiffs for their execution; and

d. Knowingly concealing the details of the Mortgage Loan until the time of closing.

83.     During the time that the Defendants and their agents serviced the Plaintiffs' Mortgage Loan, the Defendants were under a duty to employ competent mortgage servicing techniques, including but not limited to, protecting the Plaintiffs' financial interests.

84.     The Defendants specifically breached their servicing duties by the following actions:

a. Failing to accurately account for payments; and

b. Failing to accurately account for interest payments;

85.     The Defendants and their agents breached their duty of professionalism and disclosure that they were required to provide.

86.     As a direct and proximate result of the Defendants' breach of their duty, the Plaintiffs suffered significant financial losses. The actions of the Defendants would qualify as both "Intentional Misconduct" and "Gross Negligence" as per Fla. Stat. §768.72 (a)(b).

87.     But for the negligence of the Defendants, the Plaintiffs would not have been injured.

WHEREFORE, the Plaintiffs ask this Honorable Court for a Judgment of compensatory damages, costs, interest, and such further and other relief as this Court may deem just and proper. The Plaintiffs demand a trial by jury on all issues so triable.

### Count VII – Breach Of The Implied Covenant Of Good Faith and Fair Dealing

88.     The Plaintiffs aver the allegations contained in Paragraphs 1 through 37 above, and incorporate them in this Count by reference as though they are fully restated herein.

89.     There exists in all law and all contracts a covenant of good faith and fair dealing.

90.     The Defendants breached their covenant of good faith and fair dealing, as relating to the mortgage loan agreements by engaging in the conduct described in the instant complaint.

91.     As a direct and proximate result of the Defendants' misconduct, the Plaintiffs have suffered actual, special, and consequential damages.

WHEREFORE, the Plaintiffs ask this Honorable Court for a Judgment of compensatory damages, costs, interest, and such further and other relief as this Court may deem just and proper. The Plaintiffs demand a trial by jury on all issues so triable.

### Count VIII – Action to Quiet Title

92.     The Plaintiffs aver the allegations contained in Paragraphs 1 through 37 above, and incorporate them in this Count by reference as though they are fully restated herein.

93.     The Defendants have a recorded mortgage on the property that casts a cloud on the title that otherwise is in the name of the Plaintiffs.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

94.    The Defendants are not the rightful owner of the property interest that is described in the mortgage document that is attached hereto as Exhibit A, and made a part hereof.

95.    Moreover, the Defendants claim to have an interest in the said property, which does cast a cloud on the title of said property.

96.    Furthermore, the Defendants would not be entitled under any circumstances to enforce its alleged or asserted claim in that the said mortgage was derived in such a manner and with conduct that was of unclean hands in that the Defendants:

a.    Committed fraud by inflating the Plaintiffs income by $42,092.00 to qualify them for a loan that they could not afford and that was destined to fail;

b.    Violated the Truth In Lending Act by failing to properly disclose and provide required documentation as required by 15 U.S.C. §1640;

c.    Violated Fla. Stat. §772.101-104 through their pattern of fraud and the reinvestment of the proceeds of that fraud.

d.    Violated Fla. Stat. §501.203 by engaging in a pattern of false, deceptive, and misleading representations that had the affect of defrauding the Plaintiffs;

97.    The Defendants, being in a position where its conduct or the conduct of which it knew or should have known, has no right to enforce any terms of the mortgage against the said property, as any such action would be in a Court of Equity, and unclean hands is a full defense to any such claim.

WHEREFORE, the Plaintiffs ask this Honorable Court for a Judgment determining that removing the cloud of said mortgage from the title to the land and forever quieting the title in the Plaintiffs, and adjudging that the Plaintiffs have a good fee simple title to the said property, thereby cleared of the cloud, that the Plaintiffs be awarded their attorneys' fees, costs, and other relief as this Court may deem just and proper. The Plaintiffs demand a trial by jury on all issues so triable.

### Prayer for Relief

WHEREFORE, the Plaintiffs, ANTHONY DAVIS and CONIQUE DAVIS, respectfully requests this Honorable Court issue a Judgment against Defendants for: quieting title in favor of the Plaintiff, compensatory damages, costs, attorneys' fees, and any such other relief as this Court may deem just and proper.

Dated this 3rd day of August, 2009.

THE TICKTIN LAW GROUP, P.A.
Attorneys for the Plaintiffs
600 West Hillsboro Boulevard
Suite 220
Deerfield Beach, Florida 33441-1610
Telephone: (954) 570-6757


JOSHUA BLEIL, ESQUIRE
FLORIDA BAR NO.: 11759

19
THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

33 of 60

CFN 2007R0571848
OR Bk 25681 Pgs 3839 - 3861; (23pgs)
RECORDED 06/07/2007 11:05:08
MTG DOC TAX 906.50
INTANG TAX 518.00
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA

Return To: AURORA LOAN SERVICES, LLC
601 5th Ave, PO Box 4000
Scottsbluff, NE 69363

This document was prepared by:

CYNTHIA JOY KOLAN
AURORA LOAN SERVICES
400 PROFESSIONAL DRIVE, SUITE 100
GAITHERSBURG, MD 20879

——————————————— [Space Above This Line For Recording Data] ———————————————

# MORTGAGE

MIN   100025440003835524

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   May 18, 2007
together with all Riders to this document.
(B) "Borrower" is

ANTHONY DAVIS AND
CONIQUE DAVIS , HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is   LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK

FLORIDA -Single Family- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3010 1/01

-6A(FL) (0005)
Page 1 of 16                     Initials: _CeD_
VMP MORTGAGE FORMS - (800)521-7291          _A.D._

EXHIBIT
A

100025440003835524
0046495354

Lender is a **LEHMAN BROTHERS BANK, FSB , A FEDERAL SAVINGS BANK**
organized and existing under the laws of **UNITED STATES**
Lender's address is
**400 PROFESSIONAL DRIVE, SUITE 500 , GAITHERSBURG, MD 20879**

(E) "Note" means the promissory note signed by Borrower and dated **May 18, 2007**
The Note states that Borrower owes Lender
**TWO HUNDRED FIFTY NINE THOUSAND & 00/100**                                              Dollars
(U.S. $     259,000.00   ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than   **June 1, 2037**

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | PREPAY/ |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

-6A(FL) (0005)                          Page 2 of 16             Initials: _CeD_        Form 3010  1/01
                                                                    _AD._

100025440003835524
0046495354

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the **County**  [Type of Recording Jurisdiction]

of **Dade**  [Name of Recording Jurisdiction]:

```
All that tract or parcel of land as shown on Schedule "A" attached
hereto which is incorporated herein and made a part hereof.


West 75 feet of Tract 1, of REVISED PLAT OF CHRISTIE LAWNS,
according to the Plat thereof, recorded in Plat Book 35, Page
18, of the Public Records of Miami-Dade County, Florida.
```

Parcel ID Number:
**1899 NW 84TH STREET**
**MIAMI**

("Property Address"):

which currently has the address of .
[Street]
[City], Florida   **33147**   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

-6A(FL) (0005)          Page 3 of 16          Initials: CID  A.D.          Form 3010  1/01

100025440003835524
0046495354

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

-6A(FL) (0005)   Page 4 of 16   Initials: CBD A.D.   Form 3010 1/01

100025440003835524
0046495354

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

-6A(FL) (0005)                          Page 5 of 16                 Initials: _A.D._                 Form 3010  1/01

100025440003835524
0046495354

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard

-6A(FL) (0005)                          Page 6 of 16                Initials: CGD  A.D.                Form 3010  1/01

100025440003835524
0046495354

or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise

-6A(FL) (0005)                    Page 7 of 16          Initials: *CBD* A.D.          Form 3010  1/01

10002544000383552⁴
0046495354

agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause. ·

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of

-6A(FL) (0005)     Page 8 of 16     Initials *CED*     Form 3010  1/01
*A.D-*

100025440003835524
0046495354

disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

-6A(FL) (0005)   Page 9 of 16   Initials: *CED* / *A·D·*   Form 3010  1/01

100025440003835524
0046495354

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

-6A(FL) (0005)

Page 10 of 16

Initials: CED
A.J.

Form 3010  1/01

100025440003835524
0046495354

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument

-6A(FL) (0005)   Page 11 of 16   Initials: *CEI*
*A.O*   Form 3010   1/01

100025440003835524
0046495354

shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument,

-6A(FL) (0005)          Page 12 of 16          Initials: _CEO_  _A.D._          Form 3010  1/01

100025440003835524
0046495354

and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental

-6A(FL) (0005)

Page 13 of 16

Initials: C.R.D.
A.D.

Form 3010  1/01

100025440003835524
0046495354

Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

-6A(FL) (0005)                     Page 14 of 16        Initials: *CEO A.D.*        Form 3010  1/01

100025440003835524
0046495354

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____

_____          _____ (Seal)
                                          ANTHONY DAVIS          -Borrower

_____          _____ (Address)

_____          _____ (Seal)
                                          CONIQUE DAVIS          -Borrower

                                          _____ (Address)

_____ (Seal)          _____ (Seal)
-Borrower                                 -Borrower

_____ (Address)       _____ (Address)

_____ (Seal)          _____ (Seal)
-Borrower                                 -Borrower

_____ (Address)       _____ (Address)

_____ (Seal)          _____ (Seal)
-Borrower                                 -Borrower

_____ (Address)       _____ (Address)

-6A(FL) (0005)                Page 15 of 16                Form 3010  1/01

100025440003835524
0046495354

STATE OF FLORIDA,
 The foregoing instrument was acknowledged before me this    County as: Broward
                         5-18-07    by

Anthony Davis ,
Conique Davis

who is personally known to me or who has produced          as identification.

Suzanne Bishop
Commission # DD372337
Expires December 19, 2008
Bonded Troy Fain - Insurance, Inc. 800-385-7019

          Notary Public

-6A(FL) (0006)        Page 16 of 16    Initials:     Form 3010   1/01

A.D.

100025440003835524
0046495354

# ADJUSTABLE RATE RIDER

(LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 18th day of May, 2007 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to

LEHMAN BROTHERS BANK, FSB

("Lender") of the same date and covering the property described in the Security Instrument and located at:

1899 NW 84TH STREET, MIAMI, FLORIDA 33147

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of 9.675 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of June , 2012 and on that day every 6th month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal . The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 75 HUNDREDTHS percentage points ( 2.750 %) to the Current Index. The Note Holder will then round the result of

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN THE WALL STREET JOURNAL ) - Single Family - Fannie Mae Uniform Instrument

-838R (0402)   Form 3138 1/01

Page 1 of 3          Initials: _____

VMP Mortgage Solutions, Inc.

(800)521-7291

100025440003835524
0046495354

this addition to the nearest one-cighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 15.675 % or less than 9.675 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than

TWO                                                                       percentage points
( 2.000

6        %) from the rate of interest I have been paying for the preceding months. My interest rate will never be greater than 15.675 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

VMP-838R (0402)                        Page 2 of 3                Initials: *CEO*   Form 3138 1/01
                                                                            *A.D.*

100025440003835524
0046495354

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
ANTHONY DAVIS       -Borrower

_____ (Seal)
CONIQUE DAVIS       -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

VMP-838R (0402)       Page 3 of 3       Form 3138 1/01

Book25681/Page3857     CFN#20070571848       Page 19 of 23

100025440003835524
0046495354

## ADDENDUM TO ADJUSTABLE RATE RIDER

This addendum is made   **May 18 , 2007**                      and is incorporated into and deemed to amend and supplement the Adjustable Rate Rider of the same date.

The property covered by this addendum is described in the Security Instrument and located at:
**1899 NW 84TH STREET , MIAMI , FLORIDA 33147**

**AMENDED PROVISIONS**
In addition to the provisions and agreements made in the Security Instrument, I/we further covenant and agree as follows:

**ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than  **15.675**% or less than **9.675 %**.  Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than  **TWO**                 percentage point(s) (  **2.000**      %) from the rate of interest I have been paying for the preceding six (6) months.  My interest rate will never be greater than          **15.675   %**.  My interest rate will never be less than   **9.675   %**.

**TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

In Witness Whereof, Trustor has executed this addendum.

| Witness | |
|---|---|
| Date | ANTHONY DAVIS |
| Date | CONIQUE DAVIS |
| Date | |
| Date | |

DIS0221
1202  LIBOR Addendum to Rider                                                                 1/01

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NUMBER: 0046495354

PROPERTY ADDRESS: 1899 NW 84TH STREET
MIAMI, FLORIDA 33147

THIS ADDENDUM is made this 18th day of May , 2007           and is incorporated
into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date
as this Addendum executed by the undersigned and payable to
LEHMAN BROTHERS BANK, FSB, 400 PROFESSIONAL DRIVE, SUITE 500, GAITHERSBURG, MD 20879
                                                            (the Lender).
THIS ADDENDUM supersedes Section 4(C) of the Rider.  None of the other provisions of the
Note are changed by this Addendum.

## 4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (C)   Calculation of Changes

    Before each Change Date, the Note Holder will calculate my new interest rate by
adding 2.75              percentage point(s) ( 2.75 %) to the Current Index for such
Change Date.  The Note Holder will then round the result of this addition to the nearest one-
eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D), this
rounded amount will be my new interest rate until the next Change Date.

    During the Interest-Only Period, the Note Holder will then determine the amount of
the monthly payment that would be sufficient to repay accrued interest.  This will be the
amount of my monthly payment until the earlier of the next Change Date or the end of the
Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I
make a voluntary prepayment of principal during the Interest-Only Period, my payment amount
for subsequent payments will be reduced to the amount necessary to pay interest at the then
current interest rate on the lower principal balance. At the end of the Interest-Only Period and
on each Change Date thereafter, the Note Holder will determine the amount of the monthly
payment that would be sufficient to repay in full the unpaid principal that I am expected to owe
at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly
payments over the remaining term of the Note.  The result of this calculation will be the new
amount of my monthly payment.  After the end of the Interest-Only Period, my payment
amount will not be reduced due to voluntary prepayments.

Dated:    5·18·0)                              ANTHONY DAVIS

                                               CONIQUE DAVIS

DIS0291                        page 1 of 1                         1/01
Form 603F

# PREPAYMENT RIDER

## *6 Months of Interest on Amount Prepaid*

This Prepayment Rider is made this 18th day of May                 , 2007   and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to   LEHMAN BROTHERS BANK, FSB
(the "Lender") of the same date and covering the property described in the Security Instrument and located at     1899 NW 84TH STREET MIAMI, FLORIDA 33147
                                                                            (the "Property").

Additional Covenants.  Notwithstanding anything to the contrary set forth in the Note or Security Instrument, Borrower and Lender further covenant and agree as follows:

Borrower has the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment."  A "Full Prepayment" is the Prepayment of the entire unpaid Principal due under the Note.  A payment of only part of the unpaid Principal is known as a "Partial Prepayment."

If, within the 3   -year period beginning with the date Borrower executes the Note (the "Penalty Period"), Borrower makes a Full Prepayment or Partial Prepayment in any twelve (12)-month period that exceeds 20% of the original Principal loan amount, Borrower will pay a Prepayment penalty as consideration for the Note Holder's acceptance of such Prepayment.  The Prepayment penalty will be equal to the amount of interest that would accrue during a six (6)-month period on the entire amount prepaid, calculated at the rate of interest in effect under the terms of the Note at the time the Prepayment exceeds 20% of the original Principal loan amount.  If the prepaid loan amount exceeds 20% of the original Principal loan amount in any twelve (12)-month period, the Prepayment Penalty will be enforced on 100% of the amount prepaid.  No Prepayment penalty will be assessed for any Prepayment made after the Penalty Period.  These provisions will be enforced unless otherwise prohibited by applicable state law or regulation.

Notwithstanding the foregoing, in the event of a Full Prepayment concurrent with a bona fide sale of the Property to an unrelated third party after the first   3   year(s) of the term of the Note, no Prepayment penalty will be assessed.  In that event, Borrower agrees to provide the Note Holder with evidence acceptable to the Note Holder of such sale.

*Ced*

0046495354                                      100025440003835524

*A.l.*

630R – Prepayment Rider
6 Months Interest Amount Prepaid (Full or Partial)
A630R1                                          Page 1 of 2                          2/06

```
OR BK 25681 PG 3861
LAST PAGE
```

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_____ (Seal)
Borrower  ANTHONY DAVIS

_____ (Seal)
Borrower  CONIQUE DAVIS

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

_____ (Seal)
Borrower

0046495354

100025440003835524

630R – Prepayment Rider
6 Months Interest Amount Prepaid (Full or Partial)
A630R2

Page 2 of 2

2/06

# EXHIBIT C

IN THE CIRCUIT COURT, 11th
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE                COUNTY,
FLORIDA

ANTHONY DAVIS and CONIQUE DAVIS,            CASE NO.: 09-57569-CA-24

       Plaintiffs,

vs.

AURORA     LOAN     SERVICES,     LLC,
LEHMAN BROTHERS HOLDINGS, INC.,
MORTGAGE                    ELECTRONIC
REGISTRATION SYSTEM, INC. (MERS),
DOES 1-100 and TRUSTEES 1-100,

       Defendants.

_____/

## NOTICE OF FILING NOTICE OF REMOVAL TO FEDERAL COURT

PLEASE TAKE NOTICE that defendant Aurora Loan Services, Inc. has, this 20th day of

August, 2009, submitted for filing in the United States District Court for the Southern District of

Florida, Miami Division, its *Notice of Removal* of this case, pending in the Circuit Court, in and

for Miami-Dade County, Florida.  This case has now been removed to federal court.  A copy of

said notice of removal is attached as EXHIBIT A.

Respectfully submitted,

William P. Heller, Florida Bar No. 987263
e-mail:  william.heller@akerman.com
Celia C. Falzone, Florida Bar No. 0016439
e-mail:  celia.falzone@akerman.com
AKERMAN SENTERFITT
350 East Las Olas Blvd., Suite 1600
Fort Lauderdale, Florida 33301
954-759-8945(ph)/954-463-2224 (fax)
*Counsel for Aurora Loan Services LLC*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail to: Joshua Bleil, Esq., The Ticktin Law Group, P.A., 600 West Hillsboro Boulevard, Suite 220, Deerfield Beach, Florida 33441-1610 on this 20th day of August, 2009.

By: _____

Attorney

2

JS 44 (Rev. 2/08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)    NOTICE: Attorneys MUST Indicate All Re-filed Cases

**August 20, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## I. (a) PLAINTIFFS

Anthony Davie & Conique Davis

**DEFENDANTS**

Aurora Loan Services LLC, Lehman Brothers Holdings, Inc., Mortgage Electronic Registration System, Inc. (MERS), Does 1-100

**(b)** County of Residence of First Listed Plaintiff    Miami-Dade
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Douglas County
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Joshua Bleil, The Ticktin Law Group, P.A.
600 W. Hillsboro Blvd., Suite 220
Deerfield Beach, FL 33441
954-570-6757

Attorneys (If Known)

William P. Heller, Akerman Senterfitt, 350 E. Las Olas Blvd., #1600, Fort Lauderdale, FL 33301 - attys for Aurora

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

| II. BASIS OF JURISDICTION (Place an "X" in One Box Only) | | III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) | | | |
|---|---|---|---|---|---|
| | | (For Diversity Cases Only) | | | |
| | | | PTF DEF | | PTF DEF |
| ☐ 1 U.S. Government Plaintiff | ☑ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State | ☑ 1 ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 ☐ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State | ☐ 2 ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 ☑ 5 |
| | | Citizen or Subject of a Foreign Country | ☐ 3 ☐ 3 | Foreign Nation | ☐ 6 ☐ 6 |

09cv22460 - SEITZ / O'Sullivan

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding    ☑ 2 Removed from State Court    ☐ 3 Re-filed- (see VI below)    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO    b) Related Cases ☐ YES ☑ NO

JUDGE                    DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

Removal of action alleging violations of TILA and RESPA.

LENGTH OF TRIAL via 2 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD    DATE 8/20/09

FOR OFFICE USE ONLY

AMOUNT $350.00    RECEIPT #    IFP